

# SHIP REPAIR CONTRACT

OWNER: Great Eastern Group, Inc.

ADDRESS: 7027 W. Broward Blvd. # 174

CITY: Fort Lauderdale          STATE: FL          ZIP CODE: 33317

VESSEL: HERCULES               MARISCO CONTRACT NO.: HEJY

DOCUMENT: n/a

OFFICIAL NO.: 1267677 / IMO: 9677923

MASTER:

OWNER REPRESENTATIVES:          George Hatzioannides (646-329-4599)

                                Christopher Sedlacek (305-778-1099)

This Contract is entered into between the above-named owner ("Owner"), the above-named vessel (the "Vessel"), and MARISCO ("Contractor"). The parties agree as follows:

**1. The Work**. Contractor shall perform the work described in the Hercules Dry Docking Specification, a copy of which is attached and made a part of this Contract.

**2. Time of Commencement and Completion**. Subject to authorized adjustments, the Work shall commence: 4/21/2023, and be completed not later than 5/12/2023.

3.      **Contract Amount**. Owner shall pay Contractor for the Work (the "Contract Amount") as follows: time and materials basis, except as otherwise agreed by Owners.

Payment of the Contract Amount shall be made as follows without deduction or setoff at Contractor's address set forth on the last page of this Contract: Invoicing and payments will be made at the mutually agreed upon 50% completion point and then upon completion of the work. 1.5% per month will be invoked on all late payments after 30 days from date of the invoice. A ½ % discount will be offered for prompt payment.

4.      **Change Orders**. Owner may order changes in the Work within the general scope of this Contract. The change may consist of additions, deletions or other revisions and the Contract Amount and the Time of Completion (and Time of Commencement, if appropriate) shall be adjusted by mutual agreement. Owner shall execute a Change Order for all such changes, and Owner's Rep shall sign such changes prior to commencing. One or more of the following shall determine the cost or credit resulting to the Owner from a Change in the Work: mutual acceptance of a lump sum; mutual acceptance of unit prices.

**EXHIBIT "A"**

The Contractor shall not perform any Change in the Work without a Change Order executed by one of the above referenced Owner Representatives, or a verbal confirmation from such Owner Representatives. In the event a Change is ordered in the Work, Contractor may refuse to perform the Change unless Owner executes a Change Order. In the event a Change Order is not executed by Owner and Contractor performs the Change based on a verbal confirmation the Owner Representatives, Contractor shall nonetheless be entitled to an equitable adjustment in the Contract amount and adjustment of the Time of Completion (and Time of Commencement, if appropriate), as appropriate under the circumstances.

5.  **Delays and Extensions of Time**. If Contractor is delayed at any time in the progress of the Work by any act or neglect of Owner or any representative of Owner, or by any separate contractor employed by Owner, or by changes ordered in the Work, or by Owner labor, disputes, fire, delay in transportation or shipment of materials or equipment provided by Owner, priorities or allocations of the United States Government, unavoidable casualties or any causes beyond the control of Contractor, then the Time of Completion (and Time of Commencement, if appropriate) shall be extended by Change Order for a period coextensive with the period of delay. Notwithstanding the foregoing, Owner shall not be liable for additional cost due to any act or neglect of Contractor or any representative of Contractor, or by any separate contractor employed by Contractor, or by Contractor labor disputes, delay in transportation or shipment of materials or equipment provided by Contractor, or any costs attributable to Contractor's negligence. Owner reserves the right to cancel all or any of the work for any material delay; in such event Contractor would be compensated for work in progress to the point of cancellation and for all materials procured, and a reasonable profit.

6.  **Warranty**. The following warranty shall apply to the Work:

(a)   Contractor warrants the Work (other than equipment to which a manufacturer's warranty applies, and materials for which no warranty or a different warranty period is specified in writing by Contractor prior to re-delivery of the Vessel) to be free of defective workmanship and materials, whether or not discoverable by reasonable inspection, for a period of sixty (60) calendar days after the Vessel is redelivered to Owner. Contractor shall, at its sole option, repair, replace or correct defective workmanship and materials, within the scope of this Warranty, of which it is notified in writing by Owner within the sixty (60) day warranty period. Thereafter, Contractor shall have no obligation to repair, replace or correct defective workmanship and materials or alleged negligent repair, whether or not such was discoverable by reasonable inspection-

(b)   EXCEPT FOR THE LIMITED WARRANTY SET FORTH IN SUBPARAGRAPH (a) ABOVE, SELLER MAKES NO OTHER EXPRESS WARRANTY OF ANY KIND AND, TO THE EXTENT PERMITTED BY LAW, DISCLAIMS ALL IMPLIED AND STATUTORY WARRANTIES OF ANY NATURE WHATSOEVER, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND WORKMANLIKE SERVICE. CONTRACTOR SHALL NOT BE LIABLE FOR (1) ANY INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER, AND (2) ANY DELAY OR LOSS OF USE OF THE VESSEL, INCLUDING WITHOUT LIMITATION, LOST REVENUES OR LOST PROFITS.

7.  **Limitation of Liability**.

(a)   No claim arising from performance of this Contract by Contractor, including without limitation, claims for breach of warranty or breach of contract or tort claims on theories of negligence, strict liability or otherwise, shall be valid as against Contractor unless the claim is presented in writing to

Contractor within the applicable warranty period after, and suit on the claim commenced within six (6) months after, the date of re-delivery of the Vessel to the Owner. IN NO EVENT SHALL CONTRACTOR'S AGGREGATE LIABILITY, IF ANY, TO ALL PARTIES IN INTEREST FOR ALL DAMAGES, INCLUDING WITHOUT LIMITATION, ANY TORT DAMAGES, EXCEED THREE HUNDRED THOUSAND DOLLARS ($300,000.00).

(b)     Neither the Contractor nor the Owner shall not be responsible to the other party for any loss or damage, or injury or death, or delay or failure in performing this Contract, arising or resulting from: Act of God, act of any governmental authority, whether acting in a public or proprietary capacity, stoppage or restraint of labor from whatsoever cause, riot or civil commotion, criminal act by a third party, fire (except where caused by the negligence of the Contractor or Owner, as the case may be), or any other cause of any nature whatsoever beyond the control and without the sole fault of Contractor or owner, as the case may be.  Although not liable for time lost or costs due to these occurrences, the Contractor does have contingency plans to mitigate the impact of the loss or damage.

8.     **Insurance**.

(a)     During the entire period of repair and until re-delivery of the Vessel to Owner, Owner shall, at its sole cost and expense, procure and maintain the following policies of insurance with an insurer acceptable to Contractor:  (a) Hull and Machinery Insurance (Port Risks, if available) in an amount equal to the full actual value of the Vessel, and (b) Protection and Indemnity Insurance, or comparable liability coverage, insuring its interest as owner of the Vessel, for third party claims arising from personal injury or death, or from loss of or damage to property, with a minimum limit of $1,000,000.00 applicable to any one accident or occurrence.  Any deductible on the aforesaid policies shall not exceed an amount acceptable to Contractor and shall be the sole responsibility of Owner.  Each of the aforesaid policies shall waive subrogation against contractor and its affiliates and name Contractor and its affiliates as additional assureds.

(b)     During the entire period of repair and until re-delivery of the Vessel to Owner, Contractor shall, at its sole cost and expense, procure and maintain Ship Repairers' Liability insurance providing full coverage for such loss or damage for which the Contractor may be liable.  Such insurance shall be for an aggregate principal amount mutually agreed between the Contractor and Owner prior to commencement of the Work.

9.     **Indemnity**.

(a)     Owner and all persons claiming under owner, and the Vessel shall indemnify, defend and hold Contractor harmless from all liability (including costs and attorneys' fees incurred by Contractor in defending against any such liability or in enforcing this indemnity provision) arising out of or connected with (a) failure of Owner to perform or satisfy any covenant or condition of this Contract, (b) injury to or death of Owner's representatives while on Contractor's premises, unless the same shall have been caused by the sole negligence of Contractor, or (c) violation of any environmental pollution statute or regulation for pollution attributable to the Vessel, unless the same shall have been caused by the sole negligence of Contractor.

(b)     Contractor and all persons claiming under Contractor shall indemnify, defend and hold Owner and Vessel harmless from all liability (including costs and attorneys' fees incurred by Owner in defending against any such liability or in enforcing this indemnity provision) arising out of or connected with (a) failure of Contractor to perform or satisfy any covenant or condition of this Contract, (b) injury

3

to or death of Contractor's representatives while on the Vessel premises, unless the same shall have been caused by the sole negligence of Owner, or (c) violation of any environmental pollution statute or regulation for pollution, unless the same shall have been caused by the sole negligence of Owner.

**10.     Contract Amendments**.  This Contract may not be amended except by a written instrument signed by the parties and identified as an amendment.  This Contract is a complete and exclusive statement of all the terms of the agreement between Contractor, Owner and the Vessel and shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade.  All prior or contemporaneous agreements, understandings and representations are merged in this Contract.  Contractor has no duty or liability to Owner or the Vessel except as expressly set forth in this Contract.

**11.     Delinquent Payments**.  Payment for the Work shall be made as set forth in paragraph 3 above.  If any amount is not paid by Owner to Contractor when due, Owner agrees (without waiver of any legal remedy available to Contractor) to pay Contractor interest at the maximum legal rate permissible for contracts.  In addition, Owner agrees to pay for any expenses that are incurred by the Contractor in the collection of any payment past due for the work accomplished and accrued interest.

**12.     Contractor's Premises**.  Unless authorized by Contractor to do so, Owner and its agents, employees and invitees are not permitted to enter areas of Contractor's facilities where vessel repairs are performed or to perform any maintenance or repairs to the Vessel while it is in Contractor's facilities.  In the event Contractor authorizes Owner to enter vessel repair areas or perform maintenance or repairs, Owner shall comply with all conditions imposed by Contractor in granting the authorization.  For the avoidance of doubt, any maintenance and repairs performed by the Vessel crew, or performed by manufacturer's representatives provided by Owner as specified in the Hercules Dry Docking Specification, shall be consider authorized by the Contractor.

**13.     Contractor's Affiliates**.  All limitations of and exemptions from liability and entitlement to indemnity, applicable to Contractor and Owner by law or by the terms of this Contract, shall apply to Contractor, Owner, their affiliates, and their officers, directors, employees and agents.

**14.     Arbitration**.  Any dispute arising out of this Contract which remains unresolved fifteen (15) days after written notice of the dispute has been given by one party to the other, and which does not involve monetary liability in excess of TWENTY THOUSAND DOLLARS ($20,000.00), exclusive of attorney's fees and costs, may be referred to binding arbitration in Honolulu, Hawaii, by a single Arbitrator under the rules for commercial arbitration of the American Arbitration Association and subject to Chapter 658, Hawaii Revised Statutes.  The award of the arbitrator shall be final, and may be confirmed in accordance with Chapter 658, Hawaii Revised Statutes.

**15.     Applicable Law and Jurisdiction**.  The laws of the State of Hawaii shall govern this contract.  Captions used in this Contract are for convenience of reference only and shall have no force or effect in construing or enforcing this Contract.  Unless paragraph 14, Arbitration, is applicable, any action or proceeding brought by either party in consequence of or to enforce any term or provision of this Contract shall be commenced in the First Circuit Court of the State of Hawaii or the United States District Court for the District of Hawaii at Honolulu, Hawaii, as appropriate.  Owner submits to the jurisdiction of the courts of the State of Hawaii as provided in Section 634-35(a)(1). Hawaii Revised Statutes.  The prevailing party on any such action or proceeding shall be entitled to recover its costs of suit and reasonable attorney's fees.

16. **Maritime Lien**. Contractor reserves all rights against the Vessel and personally against Owner. Nothing in this Contract or the conduct of Contractor shall be deemed to constitute a waiver of any maritime lien in favor of Contractor. However, Contractor agrees that upon re-delivery of the vessel, it shall be free of any liens that result from the Contractor's failure to pay when due, any charge for labor, material, or services incurred in connection with the work covered by this Contract.

17. **Separability of Provisions**. If any term or provision, or any part of any term or provision, of this Contract is held by any court or other competent authority to be Illegal or unenforceable, the remaining terms, provisions, rights and obligations shall not be affected.

18. **Warranty of Person Signing**. The person signing below on behalf of Owner and the Vessel warrants (a) having read and understood the above provisions, and (b) having been authorized to sign this Contract on behalf of Owner and the Vessel.

MARISCO, LTD.

BY: _____

TITLE: John A. Stewart  VP, General Manager

DATE: 21 April 2023

OWNER OR REPRESENTATIVE OF VESSEL

BY: _Virginia Hoffman_____

TITLE: Virginia Hoffman, President/CEO

DATE: 21 April 2023

**DRY DOCK ★ SHIP REPAIR**
91-607 MALAKOLE ROAD
KAPOLEI, HAWAII  96707
TELEPHONE (808) 682-1333
FACSIMILE  (808) 682-5848

**Dry Docking Specification**
(Rev. 0)

# mv HERCULES
Apr 2023

The primary purpose of this dry-docking is to effect repairs to the vessel's propulsion system components. Owners may also perform other/opportunistic work items while the vessel is out of the water. The scope of all work items expected to be performed during this dry-docking period is listed in this specification document. Owners, in their discretion, reserve the right to amend the scope of work described in this document based on work progress or emergent requirements that may arise during the docking period.

The shipyard is requested to provide a written quotation for all work items listed in this document (including optional work items) prior to execution of the ship repair contract. The shipyard's pricing proposal shall be on a "time and materials" basis with itemization of labor rates, man-hours, equipment rates, and materials as needed to support each individual work item (including optional work items). An estimated time to complete each work item shall also be included in the shipyard's proposal.

Owners intend to employ specialist technicians to attend during the dry-docking period to perform technical services to major components. These technicians will be direct sub-contractors of the owners. Owners shall advise shipyard of such technicians and their intended scope of work prior to arrival at shipyard to ensure there is no conflict with shipyard-provided services.

Shipyard personnel shall not utilize any vessel facilities, tools or equipment without the express permission of the Master.

**Shipyard personnel shall also adhere to all vessel policies and procedures including, but not limited to, policies and procedures related to <u>hot work, confined space entry, lock-out tag-out, working aloft, etc.</u> No such work shall commence on board the vessel and/or on any part of the vessel without prior express written permission of the vessel Master or his designee.**

| | |
|---|---|
| Shipyard | Marisco, Ltd.<br>91-607 Malakole St.<br>Kapolei, HI 96707<br>Tel. (808) 682-1333 |
| Owner | Great Eastern Group, Inc.<br>7027 W. Broward Blvd., #174<br>Fort Lauderdale, FL 33317 |
| Intended docking date | 21 April 2023 (or other mutually agreed date) |
| Duration | 14 days (approximately) |

## Vessel Particulars

| | |
|---|---|
| Type | Offshore Supply Vessel |
| IMO No. | 9677923 |
| USCG Official No. | 1267677 |
| Flag | United States |
| Class | American Bureau of Shipping |
| Year of Built | 2016 |
| Builder | BAE Systems – Mobile, AL |
| Hull No | 111 |
| Length Overall | 87.9 m |
| Breadth (molded) | 18.8 m |
| Depth (molded) | 8.0 m |
| Displacement (lightship) | 2,991 mt |
| Gross Tonnage | 4,092 |

## Machinery Particulars

| | |
|---|---|
| Main Engines (x2) | MaK 6M32 / 3,000 KW @ 600 RPM |
| Diesel Generators (x2) | Caterpillar C18 / 737 HP @ 1,800 RPM |
| Propellers (x2) | Scana CP 75 / four (4) blades / Dia 3,000 mm |
| Gearbox/CPP Units (x2) | ACG/600H/PF550R-1C |
| Tail shaft (x2) | Dia 280-300 mm / Length 15,862 mm (incl. hub) |
| Rudder (x2) | Van der Velden Master Rudder Type 330 MRA 21-32-15-CC-ABS |
| Stern tube seal (x2) | Kemel EVK2R-270-280 |
| Thrusters (tunnel, x3) | Berg BFTT 419 |
| Thruster (drop-down) | Rolls Royce |

## A.  GENERAL SERVICES

### A.1  Dry dock mobilization, block build and lay days.

Ref: Docking Plan Drawing 115_0190-1.Rev.A

The price for this work item is to be provided as a total amount and itemized by dockage day rate, labor, equipment, and all associated cost and fees in relation to the vessel occupying the dry dock.

The shipyard shall dock the vessel in a suitable dry dock on blocks arranged in accordance with the docking plan and with the vessel baseline being a minimum of **2.6M** above the dry dock floor. Physical verification of block build, placement, and height shall be conducted in conjunction with owner's representative not more than 48 hours before docking.

Any delays in docking due to improper and/or unsuitable blocking or dunnage arrangement and/or materials shall be for the shipyard's account. Vessel is to be dry docked immediately upon arrival at the shipyard.

The shipyard shall ensure the vessel will be arranged in the dry dock in such a manner that will enable unobstructed removal and installation of the rudders, propellers and tail shafts, and the unobstructed lowering and raising of the drop-down combi-thruster.

### A.2  Docking and undocking.

The owners shall deliver the vessel into the dry dock using the vessel's own propulsion. Vessel draft and trim condition shall be mutually agreed. Owners shall also provide pilots and assist tugs during docking and undocking at the discretion of the vessel's Master or as otherwise required.

Suitable communication shall be available between vessel's Master and Dock Master to efficiently and safely slip and un-slip the vessel. During the course of the slipping, the shipyard will exercise the utmost care to prevent any flooding, deformities, failures, power interruptions or surges and overloading mechanically or electrically. Vessel shall not experience a power outage of more than 20 minutes during transfer from ship's power to shore power.

After the initial entry into the dry dock, any costs resulting from the vessel being undocked, shifted, moored, berthed and/or re-docked shall be for the shipyard's account unless due to owner's requirement.

### A.3  Gangway and means of access/escape.

The shipyard shall provide and install two means of access/escape between the vessel and the dry dock. One means shall be a gangway between the vessel the dry dock wing wall. The second means shall be a stair tower between the vessel and the dry dock floor. Both means of access/escape shall be adequately secured, lit and protected to enable safe passage at all times.

### A.4 Shore electric power.

The shipyard shall provide shore power supply to the vessel which shall be measurable. Shipyard shall quote the cost for connection, disconnection and the per-unit cost of electricity consumption.

The power feed will be for single vessel supply so individual vessel supply can be measured. An owner's representative and a shipyard representative shall jointly witness and record meter readings at connection, disconnection and daily.

<u>Power Requirements</u>

| | |
|---|---|
| Volts: | 480v |
| Hz: | 60 Hz |
| Wire system: | 3 wire + PEN (Protected Earth & Neutral) |
| Amps: | 1-250A connection |

### A.5 Fire main water supply.

The shipyard shall provide a dedicated water supply to the vessel's fire main as soon as practicable but prior to vessel's high sea chest rising above water level. Water shall be provided at a suitable pressure at all times without interruption. Shipyard shall quote the cost for connection and disconnection.

### A.6 Garbage disposal.

The shipyard shall provide one adequately sized dumpster on vessel's deck for reception of vessel's sold waste. Shipyard shall remove dumpster when filled or as otherwise requested by owners and shall replace with empty dumpster. Shipyard shall advise owners of any requirements related to waste separation and recycling.

### A.7 Fresh water supply.

The shipyard shall, upon owner's request, provide fresh water supply which shall be measurable. Shipyard shall quote the cost for connection, disconnection and the per-unit cost of fresh water supplied.

The vessel currently plans to arrive in shipyard with adequate fresh water supply in vessel's tanks. However, vessel may require shipyard supplied fresh water occasionally during the docking period.

### A.8 Sewage disposal.

The shipyard shall, upon owner's request, provide reception for vessel to pump sewage which shall be measurable. Shipyard shall quote the cost for connection, disconnection and the per-unit cost of sewage discharged from vessel.

The vessel currently plans to arrive in shipyard with adequate sewage storage capacity in vessel's tanks. However, vessel may require shipyard to receive sewage

occasionally during the docking period.

### A.9   Oily waste disposal.

The shipyard shall, upon owner's request, provide reception for oily water and sludge pumped from vessel which shall be measurable. Shipyard shall quote the cost for connection, disconnection and the per-unit cost of oily waste discharged from vessel.

The vessel currently plans to arrive in shipyard with adequate oily waste storage capacity in vessel's tanks. However, vessel may require shipyard to receive oily waste occasionally during the docking period.

### A.10   Crane service.

The shipyard shall provide crane service sufficient to lift materials between the vessel's open decks and the drydock floor and/or quayside.

### A.11   Compressed air.

The shipyard shall, upon owner's request, provide compressed air manifold on deck of vessel with sufficient pressure and connections to operate three (3) customary pneumatic tools (i.e. needle guns) simultaneously.

### A.12   Gas free certification.

The shipyard shall arrange a certified Marine Chemist to attend vessel as needed to certify designated spaces as "Safe for Entry" and/or "Safe for Hot Work" as required.

Following the attendance of the Marine Chemist, the shipyard shall provide a designated and qualified Shipyard Competent Person on a daily basis to maintain the Marine Chemist Certificate.

### A.13   Fire watchmen.

The shipyard shall provide adequately trained and equipped fire watchmen during all hot work evolutions performed on or about the vessel. No hot work shall commence without prior express written permission of the vessel Master or his designee.

### A.14   Receiving.

The shipyard shall receive and store all material shipments delivered for the vessel prior to and during the dry-docking period as required and shall maintain a record of all such materials received. The shipyard shall be responsible for the care and custody of such materials until delivered on board the vessel.

### A.15   Other services.

The shipyard shall list and quote any other standard and customary services which are necessarily related to the work specified in this document, and which are not elsewhere specified in this document.

### B. DRYDOCKING

### B.1 Rudders.

The shipyard shall provide all labor, equipment and perform all tasks necessary for removal and reinstallation of both of vessel's rudders in accordance with manufacturer's instructions and in presence of manufacturer's technician, including but not limited to:

- Access plates on sides of rudder will need to be cut to access rudder hydraulic nut; plates are to be rewelded and pressure tested following reinstallation of rudders.

- Measure and record rudder bearing clearances in presence of manufacturer's technician and class surveyor.

- All exposed areas in way of rudder stock/nut shall be cleaned and new seals and wear bushing to be replaced to satisfaction of manufacturer's technician prior to rudder reinstallation.

Note: New seals will be owner furnished.

### B.2 Lube oil in hubs/tail shafts.

The shipyard shall provide labor, equipment and perform all tasks necessary to drain and dispose of the lube oil currently within the controllable pitch propeller hubs and tail shafts. The hubs and tail shafts shall be refilled with new lube oil following reinstallation of the tail shafts.

Note: New lube oil will be owner furnished.

### B.3 Tail shafts and propeller hubs.

The shipyard shall provide labor, equipment and perform all tasks necessary to remove propeller blades, intermediate shaft coupling, tail shafts and propeller hubs (both port and starboard) in accordance with manufacturer's instructions and in presence of manufacturer's technicians, including but not limited to:

- Visually inspect surface of propeller blades, remove blades from hub and land for further inspection.

- Measure and record stern tube and strut bearing clearances in presence of manufacturer's technician and class surveyor.

- Assist manufacturer's technicians with disconnect intermediate shaft coupling inside vessel.

- Disconnect stern tube bearing seals.

- Withdraw tail shaft and hub assembly from vessel and place in shipyard shop for

further inspection and repair by manufacturer's technicians.

- Upon completion of repairs, and in accordance with manufacturer's instructions, reinstall tail shaft and hub assembly, reconnect stern tube bearing seals, reconnect intermediate shaft coupling, reinstall propeller blades.

Note: Propeller blade seals and other specialty parts necessary for repair/rebuild of propeller hubs and shaft push-pull rods will be owner furnished.

### B.4   Stern tube seals.

The shipyard shall provide labor, equipment and perform all tasks necessary to remove and reinstall the stern tube seals (both port and starboard) in conjunction with the removal/reinstallation of the tail shafts.

Note: New stern tube seal parts will be owner furnished.

### B.5   Stern tube bearings.

The shipyard shall, upon owner's request, remove stern tube and strut bearings as needed and reinstall new bearings. New bearings shall be machined to manufacturer specifications prior to installing.  Alignment of stern tube shall be verified prior to reinstalling bearings.

Note: New pre-machined bearings stock will be owner furnished in the event new bearings are required.

### B.6   Pressure washing hull (spot).

The shipyard shall, upon owner's request, pressure wash spot areas of vessel's underwater hull and sea chests as identified by owners to remove marine growth.

### B.7   Hull coating (spot).

The shipyard shall, upon owner's request, provide labor, equipment and perform all tasks necessary for hull preparation and application of hull coating (tie coat and anti-fouling) in spot areas as identified by owners.

Note: New paint will be owner furnished in the event hull painting is required.

### B.8   Potable water tank coating (spot)

The shipyard shall, upon owner's request, ventilate, inspect, clean and apply coating inside vessel's potable water tanks in spot areas as identified by owners.

Vessel has two (2) potable water tanks with capacity of 6,525 gallons each.

Note: New paint/tank coating will be owner furnished.