CARLSMITH BALL LLP

| | |
|---|---|
| WILLIAM M. HARSTAD | 8942-0 |
| ARSIMA A. MULLER | 8631-0 |

ASB Tower, Suite 2100
1001 Bishop Street
Honolulu, Hawaii  96813
Tel No. 808.523.2500
Fax No. 808.523.0842
wharstad@carlsmith.com
amuller@carlsmith.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARISCO, LTD.,<br><br>   Plaintiff,<br><br> vs.<br><br>M/V HERCULES, official no.: 1267677/IMO: 9677923, her engines, tackle, equipment, rigging, dinghies, furniture, appurtenances, etc., *in rem*, GREAT EASTERN GROUP, INC., her Representative *in personam*, and GULFMARK AMERICAS, INC., Owner *in personam*,<br><br>   Defendants. | IN ADMIRALTY<br>CIVIL NO. CV 23-00239 JAO-WRP<br><br>**FIRST AMENDED VERIFIED COMPLAINT *IN REM* AND *IN PERSONAM***, EXHIBITS "A" TO "G"; VERIFICATION; SUMMONS |

# FIRST AMENDED VERIFIED COMPLAINT
## *IN REM* AND *IN PERSONAM*

The Verified Complaint *in rem* and *in personam* of Plaintiff MARISCO, LTD. ("**Marisco**" or "**Plaintiff**"), in a cause civil and maritime, against the M/V HERCULES, an 87.90 meter offshore supply ship, Official No.: 1267677/IMO: 9677923, her engines, tackle, equipment, rigging, dinghies, furniture, appurtenances, etc. (the "**Vessel**" or "**HERCULES**"), *in rem*, GREAT EASTERN GROUP INC., as her Representative, *in personam*, and GULFMARK AMERICAS, INC., as her Owner, *in personam*, respectfully shows:

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 and the Commercial Instruments and Maritime Lien Act, embodied at 46 U.S.C. sections 31301, *et seq.* This action is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h), and within the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "**Supplemental Rules**").

2. Jurisdiction in this Court is also proper by way of diversity jurisdiction pursuant to 28 U.S.C. § 1332; the matter in controversy exceeds $75,000, and is between citizens of different states, specifically, Hawaii on one side, and Florida, Texas, and Delaware on the other.

3. Venue is proper in the United States District Court for the District of Hawaii pursuant to 33 U.S.C. § 1391(b)(2) because the *in rem* Defendant, HERCULES, is or will soon be located in the judicial district and because a substantial part of the events or omissions giving rise to Marisco's claims occurred in Hawaii, the effects of which were felt in Hawaii.

4. The *in rem* Defendant, HERCULES, a 87.90 meter offshore supply ship, is currently located at Pier 7 at the Kalaeloa Barbers Point Harbor, Kapolei, Hawaii 96707.

5. Upon information and belief, the *in personam* Defendant, GREAT EASTERN GROUP INC. ("**Great Eastern**") is a corporation incorporated in Florida, with its principal place of business in Fort Lauderdale, Florida.

6. Upon information and belief, the *in personam* Defendant, GULFMARK AMERICAS, INC. ("**GulfMark**") is a corporation incorporated in Delaware, with its principal place of business in Houston, Texas.

7. Defendant Great Eastern cannot be found within the District of Hawaii within the meaning of Rule B of the Supplemental Rules. In particular, (1) Great Eastern is not registered with the Department of Commerce and Consumer Affairs of the State of Hawaii; (2) no place of business for Great Eastern has been found in Hawaii; (3) no agent for service of process for Great Eastern has been

found in Hawaii; and (4) Great Eastern has no listing in any known Hawaii telephone directory.

8. Defendant GulfMark cannot be found within the District of Hawaii within the meaning of Rule B of the Supplemental Rules. In particular, (1) GulfMark is not registered with the Department of Commerce and Consumer Affairs of the State of Hawaii; (2) no place of business for GulfMark has been found in Hawaii; (3) no agent for service of process for GulfMark has been found in Hawaii; and (4) GulfMark has no listing in any known Hawaii telephone directory.

9. The *in rem* Defendant, HERCULES, is now and is expected during the pendency of this action to remain within the District of Hawaii within the meaning of Rule C of the Supplemental Rules.

10. Plaintiff Marisco is a corporation incorporated in Hawaii, with its principal place of business in Kapolei, Hawaii.

11. Upon information and belief, Great Eastern owned *pro hac vice*, operated, managed, chartered, or controlled the HERCULES.

12. Upon information and belief, GulfMark owns the HERCULES. Also upon information and belief, while the HERCULES was located within the District of Hawaii, GulfMark purposefully directed its activities within the State of

Hawaii in matters relating to the HERCULES and repairs performed upon the HERCULES.

13. On or about April 21, 2023, Marisco and Great Eastern executed a Ship Repair Contract. The Ship Repair Contract provides for Marisco to perform certain repair work upon the Vessel, pursuant to the Dry Docking Specification, appended thereto. A true and correct copy of the Ship Repair Contract and Dry Docking Specification for the HERCULES is attached hereto as Exhibit "A."

14. From between April 21, 2023 through May 23, 2023, Marisco performed the repair work to the Vessel as provided in the Ship Repair Contract, at Marisco's facility in Kapolei, Hawaii. A listing of work performed and completed on the Vessel pursuant to the Ship Repair Contract (including several change orders) is attached hereto as Exhibit "B." Great Eastern accepted the Vessel and the work.

15. The estimated total amount for all work listed on Exhibit B was $884,470.40. Marisco has invoiced Great Eastern for the work performed, as detailed below.

16. On May 2, 2023, Marisco sent Great Eastern Invoice C16529, in the amount of $300,000.00, via e-mail correspondence. A true and correct copy of Invoice C16529, as well as partial billing backup as of April 30, 2023 (sent to

Great Eastern on May 3, 2023), are attached hereto as Exhibit "C."

17. On May 16, 2023, Marisco sent Great Eastern Invoice C16530, in the additional amount of $300,000.00, via e-mail correspondence. A true and correct copy of Invoice C16530, as well as partial billing backup as of May 14, 2023 (sent concurrently with Invoice C16530), are attached hereto as Exhibit "D."

18. On May 19, 2023, Marisco sent Great Eastern Invoice C16533, in the additional amount of $284,474.40, via e-mail correspondence. A true and correct copy of Invoice C16533, as well as partial billing backup as of May 19, 2023 (sent concurrently with Invoice C16533), are attached hereto as Exhibit "E."

19. On May 31, 2023, Marisco sent Great Eastern Credit Memo C16539, reflecting a final billing credit of -$22,040.68, for a final billing amount due under the Ship Repair Contract of $862,433.72. A true and correct copy of Credit Memo C16539, as well as the final billing backup dated May 31, 2023 (sent concurrently with Credit Memo C16539), are attached hereto as Exhibit "F."

20. Great Eastern has paid Marisco only $300,000.00 of the total invoiced amount under the Ship Repair Contract, which has been duly credited.

21. The outstanding balance owed to Marisco under the Ship Repair Contract amounts to FIVE HUNDRED SIXTY-TWO THOUSAND, FOUR HUNDRED THIRTY-THREE DOLLARS AND SEVENTY-TWO CENTS ($562,433.72).

22. Additionally, prior to the parties' entering into the Ship Repair Contract, at Great Eastern's request, Marisco agreed to perform, and did perform certain repairs to the HERCULES in March and April 2023, while the HERCULES was berthed at Pearl Harbor (the "**Pearl Harbor Repairs**").

23. Marisco invoiced Great Eastern a total of $9,720.85 for the Pearl Harbor Repairs on the HERCULES. On March 2, 2023, Marisco sent Great Eastern Invoice C16495, in the amount of $7,550.55, via e-mail correspondence. On April 17, 2023, Marisco sent Great Eastern Invoice C16518, in the amount of 2,170.30, via e-mail correspondence. True and correct copies of Invoice C16495 and Invoice C16518 are attached hereto as Exhibit "G."

24. Great Eastern has not paid Marisco any of the invoiced amounts for the Pearl Harbor Repairs.

25. The outstanding balance owed to Marisco for the Pearl Harbor Repairs amounts to NINE THOUSAND, SEVEN HUNDRED AND TWENTY DOLLARS AND EIGHTY-FIVE CENTS ($9,720.85).

26. Without legal cause or any justification, Great Eastern has failed to pay the outstanding amounts due and owing to Marisco in spite of repeated requests.

27. Upon information and belief, GulfMark monitored the status and condition of the HERCULES while the HERCULES was located in Hawaii.

GulfMark was advised and aware of the HERCULES's need for repairs and maintenance while the HERCULES was located in Hawaii.

28. GulfMark was aware of Marisco's having been engaged to perform certain of those repairs on the HERCULES.

29. Upon information and belief, Gulfmark maintained insurance upon the HERCULES the entire time the HERCULES was located in Hawaii, including, without limitation, the periods of time Marisco performed repairs upon the HERCULES.

30. Upon information and belief, GulfMark hired marine surveyors from ABL Group to monitor and assist with repairs and maintenance on the HERCULES. Those surveyors traveled to Hawaii at GulfMark's direction and worked with Marisco and others performing repairs and maintenance upon the HERCULES.

31. Upon information and belief, GulfMark gave instructions to those marine surveyors and others concerning further repairs to and seaworthiness of the HERCULES, both while Marisco was performing repairs to the HERCULES and after Marisco completed its repairs to the HERCULES.

32. GulfMark knew that Marisco was performing repairs upon the HERCULES and monitored the repair process, including through its marine surveyors and others. GulfMark also indicated an intention to pay Marisco for its

repair work upon the HERCULES.

33. GulfMark made direct payments to a number of vendors either located in Hawaii, or who sent materials to and/or provided services in Hawaii, which were necessary for the repairs to and maintenance of the HERCULES. These include, *inter alia*, payments by GulfMark to Brunvoll Volda AS, which shipped propeller parts costing nearly half a million dollars to Hawaii to be installed on the HERCULES while in Hawaii, payments to Hawaii companies Island Oil & Supply Co., Norko Marine Agency, Inc., and Pacific Shipyards International, and paying the crew payroll for the HERCULES. By making these payments, GulfMark ensured that the HERCULES was made seaworthy, and was capable of departing Hawaii under its own power.

34. Despite making those other payments to render the HERCULES seaworthy and capable of departing Hawaii, GulfMark has refused to pay the outstanding amounts due and owing to Marisco for the repair work that Marisco performed on the HERCULES.

35. GulfMark has taken the position in this lawsuit, including in its Answer [Doc. 36], that certain correspondence it sent to Plaintiff Marisco in Hawaii concerning the HERCULES effected a legal waiver of any maritime lien rights that Marisco might otherwise have relating to Marisco's repair work on the HERCULES.

## COUNT I
## BREACH OF SHIP REPAIR CONTRACT

36.  Marisco repeats and reallages each and every of the preceding paragraphs herein.

37.  Marisco has performed all its obligations under the Ship Repair Contract and fulfilled any and all conditions necessary prior to the filing of this action.

38.  Great Eastern's failure to pay the amounts due and owing for the work performed by Marisco under the Ship Repair Contract is a breach of that contract.

39.  Marisco is entitled to recover all damages, as well as related costs and interest, from Great Eastern resulting from Great Eastern's breach of the Ship Repair Contract.

## COUNT II
## BREACH OF CONTRACT

40.  Marisco repeats and reallages each and every of the preceding paragraphs herein.

41.  Marisco has performed all its obligations under its agreement with Great Eastern to perform the Pearl Harbor Repairs and fulfilled any and all conditions necessary prior to the filing of this action.

42.  Great Eastern's failure to pay the amounts due and owing for the Pearl Harbor Repairs performed by Marisco is a breach of contract between Marisco and Great Eastern.

43.  Marisco is entitled to recover all damages, as well as related costs and interest, from Great Eastern resulting from Great Eastern's failure to pay Marisco for the Pearl Harbor Repairs.

## COUNT III
## MARITIME LIEN

44.  Marisco repeats and reallages each and every of the preceding paragraphs herein.

45.  Marisco provided valuable repair work and other useful maritime necessaries to the Vessel for her benefit.

46.  Repair work and other maritime necessaries were accepted by the Vessel and her actual or ostensible owner, and enjoyed by them.

47.  Marisco has a rightful expectation of payment for these maritime services, but has not been paid for them.

48.  Pursuant to 46 U.S.C. § 31342, Marisco has a maritime lien on the Vessel.

49.  Marisco is currently owed $562,433.72 for repair work it performed on the Vessel under the Ship Repair Contract, exclusive of interest and attorneys' fees and costs.

50. Marisco is also currently owed $9,720.85 for the Pearl Harbor Repairs it performed on the Vessel, exclusive of interest and attorneys' fees and costs.

51. Plaintiff Marisco is entitled to interest, as well as reasonable fees and costs, including attorneys' fees and costs, arising from both the repair work it performed under the Ship Repair Contract and the Pearl Harbor Repairs.

## COUNT IV
## UNJUST ENRICHMENT

52. Marisco repeats and reallages each and every of the preceding paragraphs herein.

53. To the extent that this Court may determine that Marisco is either not in privity of contract with GulfMark and/or Marisco does not have a right to assert a lien upon the HERCULES, Marisco will lack an adequate remedy at law against GulfMark.

54. Marisco has conferred a benefit upon GulfMark, as the owner of the HERCULES, in the form of the repairs Marisco performed upon the Hercules.

55. GulfMark has retained said benefit at Marisco's detriment and expense, and without compensation to Marisco.

56. It would be unjust for GulfMark to retain said benefit, and equity and good conscience require restitution be made to Marisco.

4859-4169-2597.2                         12

57. As a result of GulfMark's wrongful actions, it has been unjustly enriched, and Marisco has been harmed by GulfMark's wrongful enjoyment of said benefits, in an amount to be proven at trial.

## COUNT V
## QUANTUM MERUIT

58. Marisco repeats and reallages each and every of the preceding paragraphs herein.

59. To the extent that this Court may determine that Marisco is either not in privity of contract with GulfMark and/or Marisco does not have a right to assert a lien upon the HERCULES, Marisco will lack an adequate remedy at law against GulfMark.

60. With GulfMark's knowledge and acquiescence, Marisco rendered valuable services and materials to GulfMark, by performing the repairs to the HERCULES, which GulfMark owns.

61. GulfMark was aware of Marisco performing the repairs to the HERCULES, and in fact monitored the repairs as they were being performed.

62. GulfMark has accepted, used, and enjoyed the benefits of the repairs performed by Marisco upon GulfMark's vessel, the HERCULES.

63. GulfMark was aware that Marisco expected to be compensated for the work Marisco performed on the HERCULES, either by Great Eastern or by the HERCULES' owner, which is GulfMark.

64. Marisco has been harmed by GulfMark's wrongful actions in refusing to pay Marisco for the valuable services rendered by Marisco to GulfMark, and Marisco is entitled to payment for those services rendered in quantum meruit, in an amount to be proven at trial.

WHEREFORE, Marisco prays:

A. For an order providing for pre-judgment attachment and issuance of warrant for maritime arrest of the M/V HERCULES, an 87.90 meter offshore supply ship, Official No.: 1267677/IMO: 9677923, her engines, tackle, equipment, rigging, dinghies, furniture, appurtenances, etc., and all other necessaries thereunto appertaining and belonging, all pursuant to and authorized by Federal Rule of Civil Procedure Supplemental Admiralty Rule C;

B. That the HERCULES be condemned and sold to satisfy the lien of the Plaintiff, in whole or in part, with interest, costs, late fees, expenses and attorneys' fees;

C. That the Court enter judgment against the Defendants *in personam* GREAT EASTERN GROUP, INC. and/or GULFMARK AMERICAS, INC., for the total amount due to Marisco under the Ship Repair Contract and for the Pearl Harbor Repairs, including interest, attorneys' fees, late charges, costs of sale, costs of holding the secured collateral;

D.   Alternatively, that the Court enter judgment against GULFMARK AMERICAS, INC. for restitution/unjust enrichment, and/or an award in quantum meruit, for the value of the materials and services provided by Marisco for the repairs performed upon the HERCULES (inclusive of the repairs addressed in both the Ship Repair Contract and for the Pearl Harbor Repairs), in addition to interest, attorneys' fees, late charges, and other costs; and

D.   For such other relief as this Court deems just and proper.

DATED:  Honolulu, Hawaii, August 30, 2024.

/s/ *William M. Harstad*
WILLIAM M. HARSTAD
ARSIMA A. MULLER

Attorneys for Plaintiff
MARISCO, LTD.